IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| HOLLY PARKER JENSEN, HEATHER P. BATEH, AND DOES I-X,<br><br>    Plaintiffs,<br>vs.<br><br>UNITED FIRST FINANCIAL AND ROES I-X,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No.  2:09-cv-00543DAK |

    This matter comes before the court on Defendant United First Financial's ("Defendant") Motion to Dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The court held a hearing on the motion on November 17, 2009. At the hearing, Holly Jensen and Heather Bateh (collectively "Plaintiffs") were represented by Dale H. Boam and Defendant was represented by Rex H. Huang. The court took the matter under advisement.  Having heard arguments, fully considered the motion and memoranda submitted by the parties and the facts and law relevant to the motion, the court DENIES Defendant's Motion to Dismiss and enters the following Order.

## BACKGROUND

    Because the court must accept all well pled facts as true at the motion to dismiss stage, the court takes the facts from Plaintiffs' Complaint. Defendant is a business selling debt reduction services. Defendant has offices in several states and its main office is located

in Bluffdale, Utah. Plaintiffs are independent contractors who work for Defendant in differing capacities. Defendant regularly organizes, sponsors, or supports large meetings or trainings in hotels, convention centers and other places of public accommodation for the purposes of training existing sales representatives (including Plaintiffs) and recruiting new sales representatives from the general public. Both Plaintiffs are deaf and require auxiliary services, including at times the provision of interpreters, to fully participate in events run by Defendant.

On at least one occasion, Defendant held an event, attended by Plaintiffs, where Defendant refused to provide an interpreter for the keynote speaker. On other occasions, Plaintiffs have chosen not to attend events run by Defendant because Defendant would not provide interpreter services. Plaintiffs allege that Defendant's actions denied them access to benefits and information afforded to all other persons attending the events who were not deaf. Defendant has indicated to Plaintiffs that they were free to provide their own interpreters when it refused to do so.

In addition to face-to-face meetings, Defendant also conducts training teleconferences and more recently training webinars for its sales representatives. Where Plaintiffs have historically been able to provide their own video relay services that enabled them to participate in teleconferences, the switch to the use of webinars has prevented use of a similar technology to facilitate participation. Defendant has provided access to some, but not all, of the materials from its webinars to Plaintiffs.

Plaintiffs further allege that, in addition to the specified actions, Defendant's policies and procedures are similarly discriminatory in nature and tend to screen out persons who are

deaf, by reason of their disability. By adopting a policy of not providing interpreters at meetings attended by less than 2000 people and not providing access to all webinar content, Defendant has allegedly implemented discriminatory policies and procedures. This results in those sales representatives who are deaf not having access to the same information, opportunities, and training as their hearing counterparts.

Plaintiffs, therefore, bring suit under Title III of the Americans with Disabilities Act ("ADA"). 42 U.S.C. § 12181 *et seq.* They allege that Defendant's renting of meeting space in statutorily defined public accommodations confers on Defendant, a private entity, the status of public accommodation. As a public accommodation, Defendant violates Title III of the ADA by failing to provide auxiliary services to the deaf. Title III does not provide for a private cause of action for damages to remedy past wrongs, but does allow an individual to sue for injunctive relief. Plaintiffs seek declaratory relief and ask the court to enjoin the ongoing implementation of Defendant's discriminatory policies and procedures.

## DISCUSSION

### A. Plaintiffs' Standing

#### 1. Parties' Arguments

Defendant argues that Plaintiffs cannot establish standing for a Title III claim for discrimination at meetings that Plaintiffs did not actually attend. The Complaint makes several references to meetings that Plaintiffs declined to attend because Defendant did not provide interpreter services.

Defendant argues that,

> [t]o establish Article III standing, a plaintiff must show that: (1) she has suffered an 'injury-in-fact' that is (a) concrete and particularized and (b) actual or

3

imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to being merely speculative, that the injury will be redressed by the relief requested.

*Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004).

In this case, Defendant contends that Plaintiffs either did not actually attend meetings or have no intention of visiting any of the hotels which hosted the seminars again in the future. Thus, Plaintiffs cannot prove they "would visit the building again in the imminent future but for . . . barriers [to communication]." *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000). Absent the injury element, Defendant argues Plaintiffs lack standing. Defendant does not address causation or redressability.

Plaintiffs counter Defendant's standing argument by pointing to policies and procedures implemented by Defendant that they claim are discriminatory in nature.

> An injury-in-fact is a harm that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' The plaintiff must show that he or she 'sustained or is immediately in danger of sustaining some direct injury as the result of the challenged . . . conduct and [that] the injury or threat of injury [is] both real and immediate . . . .'

*Id.* (internal quotations omitted). Plaintiffs' argument is that the continuing existence and ongoing implementation of discriminatory polices constitutes the concrete and particularized injury-in-fact required for Article III standing.

### 2. Analysis

The "injury in fact" requirement is satisfied differently depending on whether the plaintiff seeks prospective or retrospective relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983). To seek prospective relief, the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future. *Id.* at 101–02,

107 n. 8. The threatened injury must be "certainly impending" and not merely speculative. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 190 (2000). A plaintiff seeking retrospective relief, on the other hand, satisfies the "injury in fact" requirement if she suffered a past injury that is concrete and particularized. *See Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 210–11 (1995). Plaintiffs allege both retrospective and prospective injury.

First, Plaintiffs' allegations of prospective injury created by the existence of and adherence to discriminatory policies are sufficient to take the future injury out of the realm of the speculative. The emails from Defendant attached as exhibits to the Complaint are sufficient notice to Plaintiffs that Defendant intends to pursue its existing policies and, if the policies are discriminatory, the alleged future harm is very likely to occur.

Defendant argues that because Plaintiffs have no stated intention of ever re-visiting the hotels or conference centers where the interpretive services were not provided, they cannot demonstrate injury-in-fact. But, under the ADA, a person with a disability is not required "to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions." 42 U.S.C. § 12188(a) (1). Should those policies prove to be discriminatory in nature, the ADA does not require Plaintiffs to engage in the futile gesture of continuing to test the policies by continued attendance at events run by Defendant they know will not feature interpreter services.

Second, the allegations of past injury are sufficiently pled to satisfy the concrete and particularized requirement. Plaintiffs allege that Defendant failed to provide interpreter

5

services at a specific meeting and a specific presentation during that meeting. The court, therefore, concludes that the Complaint provides sufficient allegation of injury to support Plaintiffs' standing.

### B. Defendant's Public Accommodation Status

#### 1. Parties' Arguments

Defendant contests Plaintiffs' claim that it is a public accommodation. Pointing to the text of 42 U.S.C. §12181, it argues that where Defendant is not one of the specifically listed private entities that can be considered public accommodations for the purposes of the ADA, it cannot be a public accommodation. Defendant continues that because its primary business is selling debt reduction services through independent sales representatives, and it is not in the business of leasing space from public accommodations, Defendant itself cannot be considered a public accommodation.

Defendant argues that renting hotel or conference space, when running its seminars, does not confer public accommodation status on it. It argues that temporary rental of a meeting room in a hotel or conference center falls short of the requirements of the "owns, leases . . . or operates" language in the ADA. 42 U.S.C. § 12182(a). Citing a variety of case law,[1] Defendant argues that the requisite element of control over the rented space is missing from this case. It claims that only when a renter can exert full control over the space does the public accommodation status extend to them. Defendant never explicitly claims it lacked control over the meeting spaces but the assertion is implicit.

---

[1] *See e.g. Pona v. Cecil Whittaker's, Inc.*, 155 F.3d 1034 (8th Cir. 1998); *Disabled Rights Action Committee v. Las Vegas Event, Inc.*, 375 F.3d 861 (9th Cir. 2004).

Defendant goes on to assert that, even if the court were to consider it a public accommodation by virtue of leasing hotel space for its public meetings, Plaintiffs' requested accommodation — the provision of sign language interpreters — is not specifically required by the ADA.

When running its webinars and video training, Defendant argues that it is not covered by Title III. Defendant points out that the failure to make all the material from its webinars and training video presentations accessible to the deaf involves only independent contractors and not employees (Title I) or the public (Title III). Therefore the failure to make all the webinar and video content accessible cannot be the basis for a claim under the ADA.

Further, with respect to the status of the webinars and training videos, Defendant points to the *Menkowitz v. Pottstown Memorial Med. Ctr.* decision, stressing that public accommodations are physical spaces. 154 F. 3d 113, 120 (3d Cir. 1998). It argues that the provision of webinars and training videos takes place in virtual spaces not governed by Title III. Additionally, assuming though not conceding that renting meeting space confers public accommodation status, Defendant argues that a nexus is required between the space and the challenged activity. Defendant points out that in this instance, there is no nexus between the provision of webinars and training videos and the rental of hotel rooms or conference space. Absent the nexus, public accommodation status cannot extend to Defendant as the result of the hotel room rental.  Thus, Defendant claims it cannot be a public accommodation by virtue of conducting webinars and training videos.

In response, Plaintiffs contend that the ADA's definition of public accommodation is broader than the physical representation of the twelve categories of public accommodation

listed in the act. Specifically, Plaintiffs argue that a private entity that "owns, leases . . . or operates a place of public accommodation" is itself a public accommodation. 42 U.S.C. § 12182(a). Hotels and conference centers are statutorily defined public accommodations. Thus, when Defendant rented the hotel or conference space, the status of public accommodation extended from the hotel or conference facility itself to include Defendant as the private entity that leased the public accommodation.

Further, Plaintiffs argue that the ADA's prohibition of discrimination against people with disabilities is not confined to physical facilities but extends to virtual facilities as well. Citing a Seventh Circuit decision, Plaintiffs contend that to distinguish between a physical sales space and a telephone or postal sales mechanism is unreasonable. *Doe v. Mutual of Omaha Insurance Co.*, 179 F.3d 557, 559 (7th Cir. 1999) (citing *Carparts Distribution Ctr. Inc. v. Automotive Wholesaler Ass'n*, 37 F.3d 12, 19 (1st Cir. 1994)).

In reply, Defendant points to factual dissimilarities in the cases cited by Plaintiffs which find leasing space does confer public accommodation status on a private entity. In *Independent Living Resources v. Oregon Arena Corp.*, both the lessor and lessee were statutorily defined public accommodations regardless of their contractual relationship — one was a sports arena routinely used for public gatherings and one a restaurant. 982 F. Supp. 698 (D. Or. 1997). Defendant argues that this is not the case here because, absent the rental of hotel meeting rooms, United First Financial is not a statutorily defined public accommodation. Defendant claims that this is a significant difference.

**2. Analysis**

The meat of the dispute here is whether the leasing of space in a public accommodation by a private entity confers public accommodation status on the private entity. The plain text of the ADA suggests that, as a private entity that "owns, leases . . . or operates" a public accommodation, Defendant has a statutorily required duty not to discriminate against the hearing impaired in its provision of services. 42 U.S.C. § 12182(a). It is undisputed that Defendant rented space to host seminars. Both Plaintiffs and members of the public were invited to these seminars and these meetings were held in hotels or convention centers, which are statutorily defined public accommodations. Therefore, it is plausible that the "owns, leases, or operates" language applies and Defendant is required not to discriminate.

Defendant points to some case law for the proposition that generally public accommodation status is extended to private entities when they have control over the entire public accommodation. *See PGA Tour, Inc. v. Martin*, 532 U.S. 661 (2001); *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861 (9th Cir. 2004). Defendant goes too far though in claiming that "[t]he crux of the 'owns leases or operate' language in the ADA applies to the leasing or operations of an *entire* public accommodation and not meeting space." Def.'s Reply Mem. p 5 (emphasis added). Nowhere in the *PGA* opinion does the Court state that proposition. Further, in *Disabled Rights Action Comm.v. Las Vegas Events, Inc.*, the Ninth Circuit overturned the district court's dismissal of a Title III claim against a private entity that leased a public accommodation under somewhat similar circumstances to this case in part based on the level of control the lessee had over the leased space. 375 F.3d at 878.

In *PGA*, the Court applied the ADA to a private entity that leased and operated a public accommodation. Justice Stevens addressed, as a threshold matter, whether the ADA applied to the PGA's events. "It seems apparent, from both the [ADA's] general rule and the comprehensive definition of 'public accommodation,' that petitioner's golf tours and their qualifying rounds fit comfortably within the coverage of Title III, and [plaintiff] within its protection." *Id.* at 667. The events occurred on golf courses, places specifically identified by the ADA as public accommodations. The sponsor leased and operated golf courses to conduct its qualifying school and tours. *Id.* at 662.

The Court found that two privileges were offered by the PGA to the golfers who used the courses — competing in the qualifying school and playing in the tours. *Id.* Further, the Court rejected the PGA's argument that the competing golfers were not members of the class protected by Title III of the ADA — its clients and customers. *Id*. "Title III's broad general rule contains no express 'clients or customers' limitation." *Id.* at 679. Even if Title III's protected class were limited to "clients or customers," as the PGA contended, the golfers who paid for the chance to compete in the sponsor's qualifying schools and tour events, could be classified as its clients or customers. *Id.* at 662–63.

Similarly, in this case, though neither the typical client nor customer of Defendant, Plaintiffs paid a price to attend these non-mandatory seminars, either in time or in money. They further derived benefit or privileges from their attendance — training and information — in the same way that the golfers derived benefit from participating in the tournaments. The seminars in this case were held in statutorily defined public accommodations, as were the events in *PGA*. The public accommodations were operated, at least for the duration of the

rental, by a private entity in both cases. Thus, just as the requirements of the ADA were applied to the private entity in *PGA*, so the ADA may potentially apply to Defendant here.

Even if the Court in PGA had explicitly taken the position that Defendant claims — that only complete control of the public accommodation by the private entity results in extension of the public accommodation status to the private entity — Defendant does not argue a lack of complete control over the public accommodation during its seminars. The facts support the position that Defendant did have sufficient control over the leased space to provide Plaintiffs' requested interpreters. In fact, under certain circumstances, Defendant did provide the requested interpreters.

In addressing Defendant's claim that the temporary rental of a hotel meeting room does not rise to the level of control implied by the ADA language "owns, leases or operates," courts have looked at the meaning of the terms to determine the amount of control required to trigger the language. In *Simenson v. Hoffman*, the court, in keeping with Supreme Court precedent, decided that because the ADA does not define the term "operates" it would construe it within its ordinary meaning. 1995 WL 631804, at *4 (N.D. Ill. 1995). To "operate," in the context of a business operation, means to put or keep in operation, to control or direct the functioning of, to conduct the affairs of, or to manage. *Id*. Defendant's actions in this case could rise to the level of putting or keeping the meeting space in operation. Further, it would not be unreasonable to characterize Defendant's actions as controlling or directing the functioning of the meeting space.

The analysis might be different if a physical barrier to access was in question. The Defendant would have much less control over the physical configuration of the hotel

11

building for instance. But, here, that is not the case. As alleged in the Complaint, Defendant had, at least on some occasions, sufficient control over the space to provide interpreter services.

With respect to the webinars and training videos, Defendant argues that the required nexus between the physical place of public accommodation and the provision of these training materials is missing. *See Parker v. Metropolitan Life Ins. Co.*, 121 F.3d 1006, 1010–11 (6th Cir. 1997). In Parker, the plaintiff complained against Met Life for violations of the ADA at the Met Life office building even though she obtained the insurance policy through her employer and never had to visit Met Life offices to obtain the policy. *Id*. The required nexus between the Met Life office building and the policy were missing. *Id*.

In this case, there does not appear to be a direct link between the provision of the webinar and video training services and the circumstances that allegedly confer public accommodation status on Defendant (hotel space rental). There may, however, be a nexus between the provision of the webinars and video training services and the allegedly discriminatory policies and procedures complained of by the Plaintiffs. The court, therefore, concludes that Plaintiffs can possibly prove at least one set of circumstances in which Defendant is a public accommodation and relief may be granted.

### C. Plaintiffs' Status as Independent Contractors

### 1. Parties' Arguments

Finally, Defendant simply asserts that Plaintiffs conflate the protections in Title I and Title III of the ADA. Defendant then claims that neither title offers protection to independent contractors.

Plaintiffs cite a Third Circuit decision, *Menkowitz v. Pottstown Memorial Med. Ctr.*, for the proposition that independent contractors can pursue an action under Title III of the ADA, despite the fact that employment claims under the ADA are covered by Title I, not Title III. 154 F.3d 113, 123 (3d Cir. 1998). The court in *Menkowitz* did in fact countenance a Title III claim by a doctor who was an independent contractor of the hospital at which he worked. *Id.* However, the court allowed the doctor to proceed against the hospital in his capacity as an individual, not because he was an independent contractor. *Id.*

### 2. Analysis

The *Menkowitz* court allowed a Title III suit by an independent contractor, not because of that status, but because the plaintiff had standing as an individual. 154 F.3d 113, 122 (3d Cir. 1998). The same rationale can be applied to this case. Plaintiffs can proceed as individuals despite their status as independent contractors. The Third Circuit noted that if Defendant's argument was valid, a discrete subset of disabled persons — independent contractors — would have no cause of action under the ADA because they would be precluded from filing under Title I because they are not employees and precluded from filing suit under Title III because they are independent contractors. *Menkowitz*, 154 F.3d at 123. The court opined, "[w]e cannot see how Congress intended such a result given the ADA's remarkable breadth of language and purpose." *Id*. Further, the Supreme Court has dismissed

attempts to limit the scope of Title III. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 679 (2001) ("Title III's broad general rule contains no express "clients or customers" limitation.")

As Plaintiffs point out, the ADA constitutes remedial legislation and should be interpreted broadly. *See Steger v. Franco, Inc.*, 228 F.3d 889, 894 (8th Cir. 2000) (holding that "the ADA is a remedial statute, and should be broadly construed to effectuate its purpose"); *Arnold v. United Parcel Serv., Inc.*, 136 F.3d 854, 861 (1st Cir. 1998) (observing that the ADA is a remedial statute which should be construed broadly); *Kornblau v. Dade County*, 86 F.3d 193, 194 (11th Cir. 1996) (same); *Tyler v. City of Manhattan*, 849 F. Supp. 1429, 1441 n.20 (D. Kan. 1994) (noting that with respect to the ADA, courts have a "duty to construe remedial legislation liberally to effectuate its purpose.") Thus, the court concludes that there exists at least one set of circumstances that Plaintiffs can prove under which relief could be granted.

## CONCLUSION

Based on the above reasoning, Defendant's Motion to Dismiss is DENIED.

DATED this 15th day of December, 2009.

BY THE COURT:

_____
DALE A. KIMBALL,
United Sates District Judge